So with that we will call the first case, United States v. Neba, and hear from Mr. Corey. Thank you, Your Honor. Good morning, Your Honors. My name is Mike Corey. Thank you for the gift. This is the first time, actually, that I have argued in front of the Fifth Circuit. I don't get much of an opportunity to argue in front of the courts and appeal. Maybe once or twice a year. I spend most of my time the last 37 years going from trial court to trial court, jail to jail, client to client, one by one. That's what we really like to hear on appeal, is the people who are there in court. I appreciate that, Your Honor. And one thing that impresses me when I come to courts like this is how far removed we are from who this case is all about, Marie Neba. And quite frankly, Your Honor, I wasn't in the courtroom in the district court. I asked to be in the courtroom. I was excluded. I wasn't invited to the party. And I learned a very unfortunate lesson when I was about 19 never to crash a party, so I did not. The fact of the matter is that Marie Neba is in her mid-50s. She has fourth-stage breast cancer. She has two 8-year-old twin boys. She had never had any criminal conviction other than this one. And she's sitting in Carswell right now, waiting for the decision of this court. Well, that's sort of unavoidable, isn't it, except for the extraordinary length of the sentence. That exactly... And she did plead guilty, right? No, Your Honor. She went to trial with a lawyer that she did not want to have represent her at the trial. This is something that happens often in the trial courts. The last time this happened, when I was involved, it was over in the Eastern District in Thailand. And the judge called everybody to court. The lawyer at the time called me to court, looked me in the eye, and he said, Who's in charge here, Mr. Corey? And I looked around... Please don't confuse us with your other experiences. Why don't you talk about this case and Judge Harmon. Wasn't this going to be the third change of counsel? Not really. Technically, yes, but the first counsel was there at the initial appearance. And he subbed out very shortly after that, Your Honor. It gives me the impression that he was the one there when Marie got arrested and needed somebody there to argue detention at the initial appearance. And I think it was actually just about a month that he was actually there. How were her rights violated in this failure to recognize you at the last moment as counsel? Very simple, Your Honor. Her rights were violated because she wanted to have somebody else represent her at trial than the person that was representing her at trial. Why didn't she wait for the last minute? Yeah, I wish people that... She's not just trying to get delayed. That's what she's trying to do, right? Oh, no, sir. I think she wants, she's realizing because the time of judgment is near that she had better make a decision now about who she really wants to have represent her. And because the time of judgment... She knows she's in trouble for a long time. Well, that's true, Your Honor. And I wish... I don't think that's even an issue, sir. I think that... And if the question was competency, then Marie loses. But I submit to the court that the question is not competency. The question is one of choice. Okay, but actually you began this presentation making a very good point. We are one step removed from the place where this happened, which is the courtroom. And typically this is a matter of discretion for a trial court guided by certain factors. So why should we step in and maybe we would have had a different judgment? That's really irrelevant. The question is did the district court abuse her discretion, district judge, in making this determination given all of the various factors? So what would show us that we should step in one step removed and substitute our judgment for that of the trial judge? Because the trial judge, Your Honor, exercised no discretion. Her comments are clear that she was the one that was in charge of her calendar. This was the date that was set for trial, and this is the day that we're going to trial. No ifs, ands, or buts about it. And that shows an absolute lack of discretion. How long was the trial being set? This was the third trial setting. I believe the, if I may just check, the initial appearance was in November of 15, and this third trial setting was in October of 16. Of course, remember that the first trial settings that are set are what we trial lawyers call soft dates, because other defendants are coming in, other defendants are pleading guilty. Investigation was continuing. So a third trial date, especially in what the government argues is a massive healthcare fraud. Well, it was $10 million. It was, Your Honor. There are bigger frauds. There are smaller frauds. You know, actually as far as healthcare fraud, we've seen a lot of them, and I can only conceive of one or two that were more than that. Well. They managed to keep this going for a long, long time. Right, and I think that's a good point to show why a third trial date within a little over a year isn't that long to have the case going. I mean, what's interesting to me is that you don't challenge the conviction on any ground. You only challenge the failure to substitute counsel and the sentence, and frankly, I am somewhat interested in the sentence because even though it's $10 million, I have never seen a sentence even close to 75 years for a white-collar crime, not to Skilling, not to Fastow, not to Bernie Embers, I don't think. I don't recall about Madoff's kids. I know he basically got a life sentence, but that was hundreds of millions, so I am concerned. And let me turn to that, Your Honor. The record doesn't support the length of the sentence, which principally arises out of the stacking, giving the maximum sentence on each count and then stacking the sentences consecutively. Is one of those money laundering? Yes, Your Honor. I think two of them were, Your Honor. And the brief points out that not only is this the longest health care fraud sentence that has been given, I believe, anywhere in the country, but compared to other types of long sentences that are given to repeat offenders, violent offenders, some of those dealing with children, a 75-year sentence, I think— Well, there isn't sufficient fact set forth by the trial judge in the record to justify either the maximum sentence on each count and certainly not the stacking of the sentences. Isn't there a presumption of reasonableness to a guideline sentence, which it says? That's true. Okay. That's absolutely true. To me, speaking only for myself and not my colleagues, I only recommend you guide your Eighth Amendment one. And what's your best case for the Eighth Amendment, best precedent case? I think comparing the length of this sentence to sentences in other cases— Right, but I'm asking for a cite to a case, a precedential case that you think controls here that would make you win on the Eighth Amendment. I'd have to look at my other notes to be— I'm not asking for the F-second or F-third, just the name of the case. What's your best case on the Eighth Amendment that says you win? So that's all I'm asking, I'm not asking for the F-third. And again, Your Honor, I'd be happy to answer that question on rebuttal, but I think that the law, the Eighth Amendment generally looks at the sentences and says, is this irregular compared to other sentences that have been handed down to other defendants for similar crimes or greater crimes? And I would consider a greater crime crimes of violence, repeat offenders, crimes of that nature. How many of these convictions carry mandatory non-summons? How many of the counts in this case? That's right. Her sentence was confected with how many mandatory minimums? I don't think there were any mandatory minimums, Your Honor, in this case. So it was all given discretion to the judge. It is. And I think 75 years— Did she sentence on each conviction, or did she have them in bed? She sentenced on each count, the maximum, and then the trial judge ran each count consecutively. And I've never seen that done in 37 years' practice. But you've been in the trial courts. I'm sorry? But you've been in the trial courts. Well, that's precisely the point. Never seen that done. I think the standard of practice, if there was a standard of practice in sentencing, is to pick out one count that has been grouped under the guidelines, sentence on that count, and then on the others, sentence concurrently. It's a presumption of reasonableness. Were they mandatory? It wasn't mandatory consecutive either. Absolutely not. Right. So what you're saying is normally they'll pick the longest one and run the others concurrent. Right. And I think— But you didn't make a separate point on that. You just attacked the whole sentence. I didn't see that you demonstrated that there was an error in making them consecutive rather than concurrent as a standalone point. Well, I think— You missed that. That's true, Your Honor. But I think the point is made because the only way you get to the 75 years— No, I know you're attacking the 75 years on the Eighth Amendment. I get that. But the issue of whether a sentence should run consecutive or concurrent is that we do see a lot of these. Not this exact circumstance, but I see a lot of sometimes concurrent, sometimes consecutive, and I see disagreements over that. I didn't see here where you pulled that out as a separate issue, the running of them consecutively, other than that just makes it longer. That's true. Okay. And I think that if we— How is she doing physically? Is she good? The last report I received is that she was still undergoing treatment for her cancer. Well, stage four is metastasized. It has into her bones, Your Honor. She's a very frail human being, and I think that sometimes we lose sight of the fact that she is a human being that deserves respect and that deserves to be treated fairly, and the stacking of sentences, I believe, is presumptively unfair because it doesn't comport with the practice of the district courts throughout the country. Thank you very much. Okay, you have time for a vote. Okay, Mr. Murphy. Good morning, Your Honors, and may it please the Court. The district court did not err in this case in posing a guideline sentence. That sentence is substantively and procedurally reasonable in light of the facts of this case and the district court's explanation, and it does not violate the amendment in light of the defendant's actions. The district court also did not err in denying Aneva's last-minute motion to substitute counsel. Turning first to the reasonablest challenges, the court— You might speak up just a bit. Oh, I'm sorry. Turning first to the reasonablest challenges, the court did not err in posing a guideline sentence. Neva simply has not overcome the presumption of reasonableness that attaches to guideline sentences. Why would we presume this is reasonable when this is higher than any sentence that I think I have ever seen for a child born? I think it's higher than 90% of the drug cases that we've had with drug cartels, maybe not the cartel people, but the people who ran big drug trafficking organizations, sex trafficking, illegal alien deals where people got killed. I've never even seen a white-collar sentence close to this. So you're just saying you add up the numbers under the sentencing guidelines. You do the maximum. What justified the government in even suggesting this was an appropriate sentence? First of all, just to be clear, Your Honor, the government recommended a 35-year sentence in this case, but it is, of course, the district court's decision that is under review and merits the presumption of reasonableness. In Rita, the Supreme Court explained that presumption of reasonableness can be appropriate in those certs that choose to employ it because the 3553A factors are still— I'm not challenging the presumption. I'm questioning, A, why is the government defending this as a presumed reasonable sentence, and, B, why isn't the presumption overcome under these unusual circumstances? Yes, Your Honor. Neva advances three reasons to overcome the presumption of reasonableness, but none are available under this court's precedent. The first reason that she advances is her illness, but the court in Rita itself, where the defendant was ill— I'm not asking now about—I mean, we know what the extenuating circumstances are. What is there in the inherent nature of Medicare fraud, $10 million, and we've seen other multimillion-dollar frauds, that justifies a sentence that is, you know, by the government's original reckoning, at least twice, three or four times what we have normally seen in such cases. In this case, as the district court explained at length, Neva committed a decade-long conspiracy to defraud the government of $13 million. She abused her position of trust as a nurse practitioner with 1,100 Medicare beneficiaries. She obstructed justice. She lied under oath, and she never accepted responsibility for her actions. The district court went through those factors and others at length for over four pages of the sentencing transcript, and that's on page 2020-23. As to Your Honor's concern that this is a high sentence relative to health care fraud, what I can say is that it is similar to other health care fraud sentences that this court has deemed—put in the category of effective life sentences. That's a term that this court has used. Okay. Did you cite some of those in your brief? Yes, Your Honor. We have— I didn't read for a while. Yes. So we have Talon, the co-defendant in this case, who received—who pled guilty. Godhead's her husband, right? Yes, Your Honor. He received 960 months. Then we have some cases that unfortunately— Yes, I am, Your Honor. Yes, Your Honor. Unfortunately, we're not citing the brief, but I will refer to them because they are matters of public record. We have the Goriaki case, which is also from the Southern District of Texas. It was a $17 million loss. The defendant pled guilty, received 480 months, which, given his age, was effectively a life sentence. Then we also have the Gibson and Kahn cases. They were co-defendants, together responsible for about $46 million of loss. They received 540 and 480 months, which— In terms of months, what was this sentence? For Gibson, it was 540 months. Yes, in this case. 900 months. 900 months, which is 75 years. I'm sorry, Your Honor? You're not really hitting very close to the target that Judge Jones has asked for. Yes, Your Honor, but given the defendant's age in those cases and the defendant's age in this case and this court's precedent, which has looked to whether the sentence is effectively a life sentence, the sentences are comparable in that respect. If she only got—if she got the sentences run concurrently, is that effectively a life sentence in her circumstance, given her— I wouldn't speculate exactly to her medical situation, but given counsel's representation, the 20-year sentence does seem to be effectively a life sentence in this case. And then 25 years, 300 months? I believe the statutory max on the last money laundering account is 20 years. And so that would— Then how did she get three 300-month sentences? I don't believe she did receive three 300-month sentences. How did she get to 900 months? Sure. So the statutory max on the health care fraud, conspiracy, and the independent accounts is 10 years apiece, and there are four of those, so that's 40 years. Then we have a false statements count that's 1035. That's one five-year. We have a conspiracy for kickbacks. That's another five. A payment for kickbacks, which is another five. Okay, so it was the—I thought it was the three. Okay. Right, so there were several counts that the defendant judged wrong.  That's right. So the biggest one would be the 20 years. That's right, Your Honor. But that is not within—so if you went to the Social Security tables, it would be within her life expectancy, even though we know with her, her life expectancy might be different. I think that's right, Your Honor, although I have not looked at the Social Security tables very recently. So Neva advances three arguments. Her illness, which you've already discussed. She also talks about her family responsibilities, but this court in the Rodriguez case has held that the family responsibilities are not enough— excuse me, the Alvarez case. This court has also—she also talks about her age as a reason for requiring a downward variance in this case, but this court in the Rodriguez case discussed how a low risk of recidivism, which is what Neva is getting at with respect to her age, does not require a downward variance, which is what Neva must show to overcome the presumption of reasonableness. Neva also argues briefly that her sentence is procedurally unreasonable, but I think the record shows in this case the district court went through the sentencing factors at length for over four pages and the transcript significantly more than the Supreme Court reviewed and read up and held was acceptable. There was a motion for a money judgment, Your Honor, and the district court granted that motion. It was for $13 million. A little over $13 million, yes. That's right, Your Honor. Yes. I'd like to turn briefly to the last-minute motion to substitute counsel as the Supreme Court— Can I just ask you one more thing on the sentence? Can we rule that they have to be run concurrently, or would we have to send back for resentencing if we end up concluding, even though that was the point that was made only in the context of the Eighth Amendment and not as really a stand-alone point, if we end up concluding that that's the right one, can we just decree that, or do we have to send it back? I think the normal course would be to send it back for resentencing, but I do want to point out that under the guidelines, the traditional course under 5G, 1.1C and D, is to do exactly what the district court did here. No, I know, and that's why I'm worried about the failure to really address that head-on, but I'm just asking as an appellate point if that's something we have to send back. I have not seen a case on that exact point, and there's none cited in the briefs, although I would be happy to look. What was the basis for the government's 35-year recommendation, and is the government required to— is it required to defend such a large sentence? The basis for the government's 35 years was its analysis of 35 53-day factors. It did not spell them out in detail, as many sentencing memos do. It analyzed them and just almost summarily concluded that 35 years was appropriate. With respect to the second part of your honors question, the government, of course, is not obligated to defend every sentence on appeal. However, in this case, the government believes that the presumption of reasonableness attaches to the sentence, and that the district court was entitled to view this case as you did, especially in light of the obstruction of justice, the lying of the oath, and the failure to— When you said that consecutive is typical in these cases, again, I'm thinking of— I don't remember the health care fraud, but I remember all our drug cases, zillions of drug cases, and typically those are run concurrent. I'm sorry, Your Honor. I did not mean to say that in health care fraud cases it is typical. What I meant to say was under the guidelines, the way that 5G 1.1C and D work is that the court is supposed to calculate the guideline sentence. You heard that was 75 years, and then run the sentences consecutively or concurrently in order to achieve that sentence. Exactly, consecutively or concurrently. Oh, you mean in order to achieve this statutory maximum. Yes, that's right. So the consecutive versus the concurrent is almost a tool that is not independently decided. It is decided in the framework of the guidelines. Because that's how you could get to 35 years when there was no one conviction that would get you there. That's right, Your Honor. So if the guidelines had been, say, 65 years in this case, then the judge would have decided several of the counts should have run concurrently in order to get to the 65 years, assuming that she wanted to get to a guideline sentence. I see that I've puzzled you with that response. Yeah, because I thought we were at a guideline sentence. We are. You're saying if the overall max under the guidelines was different than it was here. Yes, yes. That's the hypo you're creating. I introduced a counterfactual there. So turning briefly to the last-minute motion to substitute counsel, the Supreme Court in Gonzales-Lopez held that district courts have wide latitude to deny substitution motions based on the needs of fairness in the district court's calendar. Here, both of those prongs of the analysis are similar to what this court saw in the Jones case that it cited and discussed at length in the briefs. With respect to the fairness prong of the analysis, the district court found here, just as in Jones, that the government had diverted resources for the trial, that the reason for the substitution was delayed because counsel, in fact, were prepared, that the defendant had waited to file the motion up until the last minute, and that the government witnesses were being convenienced by the switch. And with respect to the court's calendar, just as in Jones where the court was concerned about disruption to its calendar, here the district court observed that she could not rearrange her schedule in an instant, and this date had been set since April for the convenience of the government, the parties, the defendant at the time. With respect to one more point regarding the sentence, I'm sorry that I jumped ahead and then jumped back. I would like to just address briefly NEPA's argument that the district court did not provide sufficient explanation for the sentence. I think that the record belies that contention from pages 2020 to 2023. The district court walked very carefully through her reasoning in this case. She talked about the nature of the loss. She then talked about the obstruction of justice. She talked about NEPA's role as an organizer, also the sophisticated means, the falsification of records. She then referred on the record to NEPA's illness, her family situation, and her age. So for all those reasons, the district court's explanation was quite thorough and provides some comfort not only procedurally but also substantively as to how the district court was viewing this case. I wanted to briefly address as well the Eighth Amendment claim that my colleague on the other side has made. The best case for us on this issue is the Rummel case, where the offense was a theft of $120 in the context of several previous small thefts. Here, similarly, or actually more seriously, we have a decade-long conspiracy for $13 million, where NEPA abused her position of trust and refused to accept responsibility. Are you aware that he cites largely guilty plea cases or are they largely tried cases, if we look at them as a group? And I've looked at some of them, obviously, but it just occurred to me I haven't looked at that group and said, are they really comparatives? Because here she went to trial and has continued to deny responsibility, which is her right, of course, but it's a factor in considering whether she lied in her own, whether she sustained responsibility and all of that. Is that a difference between those and the other cases? Well, I'm not sure, Your Honor, that he cited a case where the court found the sentence violated the Eighth Amendment other than the Solow case. That case, I believe, I do not recall whether that case went to trial or not. But in general, the cases that are cited, some of them have gone to trial, some involve acceptance of responsibility. So Ronald versus Abdel is the one that you're relying on? Yes, Your Honor. I just wanted to be sure I said it kind of softly. Oh, sorry, Your Honor. I wanted to be sure I had that. Okay, thank you. If there are no further questions, I would just conclude by saying that the district court's decision should be affirmed. Thank you. All right, thank you. The very difficult part of this case is the court... Bring that microphone up. Thank you, Your Honor. The court, and I think it was Judge Haynes who pointed out that if Marie had received the maximum of the money laundering count, 20 years, everything else running concurrent, especially given her physical situation, it would basically be a life sentence. That's why I think it was so important for her to have the lawyer she wanted trying this case. Every district court judge is in charge of his or her calendar, but simply saying, this is the day set for trial, come with the lawyer you have, or come and represent yourself is not... Yeah, there's a third option. You can get ready your life vest. So, I mean, granted, that's not an exciting option for you, I would agree, although I've been hired in very tight situations as a lawyer myself, so I understand that. I'm not suggesting you should have shown up on one day prep, but she didn't prevent you from appearing. It's not like she said, you're barred from the courtroom. She said, we're going on this day. That's true. I wasn't invited either, and as I pointed out at the very beginning, if I'm not invited, I'm not going to show. I have respect for the court. Okay, wait a minute. Do you believe that had you shown up and said, I'm ready for trial, I'm subbing in, I'll go today, whatever day it was, you know, June 4, I'm here, that she would not have prevented you to go forward? Is that what you're saying? I don't know, Your Honor. You think, okay. I thought it was clear that she would have permitted you to go forward. And I think it's not. I think she indicated that if a new lawyer came in, the new lawyer was going to need a continuance probably to prepare, but like you, Your Honor, I've been hired at the last minute to try cases too, and sometimes I think I actually do better. But the fact of the matter is that what's in the record is you're going to trial with your current lawyer, or you're going to trial pro per. I'm not going to let a new lawyer come in because that new lawyer is going to need a continuance. And I probably would have asked for a continuance, but I would have asked for a very short one, maybe a month, maybe two months. And the trial judge, with barely a blink of an eyelash, gave Marie Neves 75 years but wouldn't wait two months so that a new lawyer could come in? There's something wrong with the comparative analysis there. I mean, look, I've been a trial judge, and the problem is, when you put it that way, it sounds easy, but the problem is that she had just asked for a continuance, gotten it denied, seemed to be delaying things because she was out on bail. She's home and facing 75 years or whatever she thought she was facing, 20 years, let's say. And isn't it better to just keep putting this thing off? And at some point, you have to kind of. Things don't happen. If you have a bunch of soft settings, nothing ever happens. That much I know having been a trial judge. You've got to move things forward. Now, granted, I wasn't trying criminal cases. I understand that. But the premise, the basic premise, is still the same. So why are we going to substitute? I mean, I started out with that question. Why are we going to substitute our judgment for the trial judge's in the room where it happens? Because nobody got the speech that you just gave me. Trial judge should get the lawyer the client wants in the court and give them the exact speech that Judge Haynes just gave me and make it clear. But sometimes in language that's more undiplomatic than other times. It's reasonable to assume in some way that practicing law as long as you have, that I've understood the points that Judge Haynes was making without having heard them today. Well, I understand. And I think we're. I never send an invitation to a lawyer to appear in my courtroom. Lawyers just kind of came. There would be a setting, yes. And then they came. And I didn't know that it required an invitation. Can you, before you sit down, though, I wanted to ask that you try to give me your best case on the eighth amendment. Yes, Your Honor. We're at pages 15 and 16 of our opening brief. And there's a case called Graham versus Florida that talks about proportionality and also treating the defendant as a human being. And that's really what we're talking about. Because there are cases all over the map on this issue. And I think what we have to do is look at our common sense of experience, at how sentences are given in the federal district courts. And sentences aren't given like this in the federal district courts. It just doesn't happen. Thank you. OK. Thank you, sir.